# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

PEGGIE PORTER,

    Plaintiff,

v.

NEW AGE SERVICES CORPORATION
and PAUL S. WATFORD,

    Defendants.

No. 10 C 1784
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff filed her three-count complaint alleging violations of the Americans with Disability Act ("ADA"), the Family Medical Leave Act ("FMLA"), and intentional infliction of emotional distress ("IIED"). In her complaint, Plaintiff alleges that Defendants discriminated against her and terminated her employment because of her disability. Defendants now move for summary judgment on all counts. For the following reasons, Defendants' motion for summary judgment is granted.

## I. PRELIMINARY ISSUES

Pursuant to Local Rule 56.1, a moving party must file a statement of material facts supported by the record. Each opposing party must file a response to the movant's statements. All material facts set forth in the moving party's statement of facts will be deemed admitted unless controverted by the statement of the opposing party.

Plaintiff did not respond to Defendants' statement of facts, however, she did file her own statement of facts. Defendants aks that I deem their facts admitted because of Plaintiff's failure to strictly comply with the Local Rules. Though I acknowledge that Plaintiff did not strictly

comply with the Local Rule, her statement of facts did contain factual assertions that allegedly contradict facts set forth in Defendants' fact statement. Accordingly, for purposes of this motion, I do not deem all of Defendants' facts admitted, and will consider the facts set forth by Plaintiff.

Defendants also ask that I strike paragraphs 2, 3, 6, 7, 8, and 11 of Plaintiff's affidavit (exhibit P), because it contains improper speculation and factual argument that cannot be considered on summary judgment. I agree with Defendants as to statements 6 and 7, and strike these statements from exhibit P.

## II. FACT STATEMENT

Plaintiff, Peggie Porter ("Porter") is a former employee of New Age Services Corporation ("NASC"). NASC is a private, not-for-profit corporation that is a Commission on Accreditation of Rehabilitation Facilities ("CARF") Accredited Opioid Treatment and Human Services Provider. Defendant Paul Watford ("Watford") is employed as the Director of Finance and Administration at NASC. NASC is a provider under a contract with the Illinois Department of Human Services, Division of Alcohol and Substance Abuse to provide addiction services. NASC is funded in part by the State of Illinois to provide mental health services, and also offers a drug treatment program. Porter worked for NASC as a certified mental health counselor.

Following her son's death, Porter entered into a depression and was diagnosed with "Acute Stress Disorder." Accordingly, she went on approved leave from NASC with medical benefits from May 7, 2009 through September 20, 2009. On September 24, 2009, Watford sent Porter a letter indicating that NASC could not extend her medical leave beyond October 1, 2009. Porter's treating physician wrote to NASC in a letter dated September 30, 2009, and stated that Porter was unable to work and that he could not determine when she would be capable of

resuming her duties. Watford sent Porter a letter dated October 5, 2009 advising her that her employment would end on October 31, 2009. Porter's employment was terminated on October 31, 2009.

Porter claims that because of the effects of the medications she was prescribed (Lexapro, Trazodone, and Clonazepam) she was unable to determine whether she had been injured by an unlawful employment practice until November 29, 2009. Plaintiff has not provided any evidence to show that her medications impacted her in this way.

Porter did not file a charge with the Equal Employment Opportunity Commission or the Illinois Department of Human Rights against NASC within 300 days of being notified that her employment was being terminated.

## III. STANDARD OF REVIEW

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The facts presented are to be construed in a light most favorable to the nonmoving party. *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986).

## IV. DISCUSSION

A. Plaintiff's Claims Pursuant to the ADA Fail.

The Americans with Disabilities Act ("ADA") only allows an individual to file a private cause of action in court after filing a charge of discrimination with the EEOC and receiving notice from the agency that it will not pursue action. 42 U.S.C. § 12117(a) (incorporating requirements of 42 U.S.C. § 2000e-5(f)(1)). In Illinois, a plaintiff alleging violations of the ADA must file a charge of discrimination within 300 days "after the alleged unlawful employment practice occurred." *Stepney v. Naperville School Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004). Plaintiff admits that she did not file her charge of discrimination within 300 days of being notified of her termination. (Plaintiff filed her EEOC charge in September 2010; the deadline to file her EEOC charge was August 2, 2010.) Instead, Plaintiff argues that equitable tolling should apply to prevent the barring of Plaintiff's complaint.

Plaintiff contends that she was mentally ill and under heavy medication from October 5, 2009 to November 30, 2009. Because she was medicated, she states that she was unable to exercise reasonable diligence to determine whether she had been injured by an unlawful employment practice. Equitable tolling is permitted only in extreme circumstances where the plaintiff made a good faith error, or "has been prevented in some extraordinary way from filing a timely complaint." *Threadgrill v. Moore U.S.A., Inc.*, 269 F.3d 848, 850 (7th Cir. 2001). "The threshold for equitable tolling is very high, lest exceptions swallow the rule." *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2001). It is not enough to simply allege disability or mental illness; the party must show that an alleged infirmity prevented her "from managing [her]

4

affairs and thus from understanding [her] legal rights." *Miller v. Runyon*, 77 F.3d 189, 192 (7th Cir. 1996).

Plaintiff fails to allege facts sufficient to support her claim. First, she has put forth no evidence to show that her medications impacted her ability to understand that she was unlawfully injured. Second, she pleads facts that contradict her assertions. For example, she states that as of September 24, 2009 she believed that she had been terminated. In addition, she states that on October 2, 2009 she was able to discuss payment options with her physician and that on October 30, 2009 she planned to terminate treatment and travel to Virginia to meet with a friend to discuss ideas for Plaintiff's career path. These facts contradict the assertion that she was unable to understand an unlawful injury.

Furthermore, even if she was unable to understand her ADA claim until November 29, 2009, she still failed to file an EEOC claim in the remaining nine months prior to the expiration statutory period. This is particularly glaring because she filed her complaint in this Court on March 22, 2010. Defendants answered the complaint on June 10, 2010 and stated that she had failed to exhaust her administrative remedies. At that point, Plaintiff's 300 days had not expired, as she had until August 2, 2010 to file her EEOC claim. As the Seventh Circuit has noted, the doctrine of equitable tolling "gives the plaintiff extra time if he needs it. If he doesn't need it there is no basis for depriving the defendant of the protection of the statute of limitations." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 452 (7th Cir. 1990). Here, even if the Plaintiff was impaired by her medication until November 29, 2009, she still allowed an additional nine months to pass before filing her EEOC charge. Plaintiff has not shown a basis for depriving defendant of the protection of the statute of limitations. *See Cada*, 920 F.2d at 452-53 (plaintiff's failure to

file an EEOC complaint in the interval eight months before the statute of limitations ran out precluded the application of equitable tolling.)

Because Plaintiff failed to file an EEOC complaint within the proscribed 300 days, summary judgment is granted for Defendants as to Plaintiff's ADA claims.

B. Plaintiff's FMLA Claim Fails.

The FMLA applies only to public employers and private employers that employ fifty or more employees. 29 U.S.C. § 2611(2)(B)(ii). The FMLA specifies, however, that public agencies are "employers" under the statute regardless of the number of employees. 20 U.S.C. § 2611(4)(A)(3); 29 C.F.R. § 825.108(d). The numerical requirement, however, is implemented elsewhere in the FMLA by limiting eligibility for FMLA protections to "eligible employees." 29 U.S.C. § 2611(2)(B). Even though public agencies fall within the FMLA, despite the number of employees, employees may only seek FMLA benefits where an agency employees at least 50 employees. *Fain v. Wayne County Auditor's Office*, 388 F.3d 257, 259 (7th Cir. 2004).

It is undisputed that Defendant did not employ at least 50 employees in either 2008 or 2009 and Defendants maintain that NASC is a private, not-for-profit entity. Even so, Plaintiff argues that NASC is a "public agency" and as such, it need not have 50 employees for the FMLA to apply. Alternatively, Plaintiff argues that NASC is a joint employer. Plaintiff's arguments fail.

1. NASC Is Not A Public Agency

"Public Agency" is defined under FMLA as "the government of the United States; the government of a State or political subdivision of a State; or an agency of the United States, as State or a political subdivision of a State, or any interstate governmental agency." 29 CFR

§ 825.108(a). "The determination of whether an entity is a "public" agency, as distinguished from a private employer, is determined by "whether the agency has taxing authority, or whether the chief administrative officer or board, etc. is elected by the voters-at-large or their appointment is subject to approval by an elected official." *Id*. at 825.108(b).

In support of her contention that NASC is a public agency, Plaintiff points to two documents, Defendants' Answer to Plaintiff's Interrogatories (#2), and Exhibit M. Interrogatory #2 asked Defendants to "describe New Age Services Corporation's relationship with the Illinois Department of Drug and Substance Abuse." Defendant objected to this interrogatory as irrelevant, and answered that "NASC is a provider under a contract with Illinois Department of Human Services, Division of Alcoholism and Substance Abuse to provide services." This answer does not show that NASC is a public agency. Moreover, in its answer to Interrogatory #1 Defendant stated that it is "a private, not-for-profit corporation. . .fund[ed] [] through various grants and contracts, including with the City of Chicago, the State of Illinois, the AIDS Foundation of Chicago, and other private charitable organizations."

Exhibit M is similarly unhelpful. The first page of the document purports to be an insurance schedule that mentions neither NASC nor the Illinois Department of Human Services. The second page of the exhibit is a license dated October 1, 2008 that states that "the [] corporation whose name appears on this license [] has complied with the required provisions of Illinois Statutes and Rules and is hereby licensed and/or medicaid certified to provide alcoholism and other drug dependency services" in certain categories. Again, this does not support Plaintiff's contention that NASC is a public agency.

7

In support of Defendants' assertion that NASC is not a public agency, Defendants provide a declaration from Kathye Gorosh, the Chief Executive Officer of NASC who states that NASC is a private not-for-profit corporation. Plaintiff has put forth no evidence to cast doubt on this assertion. Even if Plaintiff did successfully show that Defendant was a public agency (which she has not), her claim is still hampered by the fact that Defendant did not employ more than 50 employees.

### 2. Plaintiff's Claims Fail Under A Joint Employer Theory.

Next, Plaintiff argues that persons jointly employed by two employers must be counted by both for FMLA purposes. Plaintiff claims that NASC, the Illinois Department of Human Services, and the City of Chicago Department of Public Health are joint employers because NASC is funded by both entities. Accordingly, Plaintiff claims that she was an employee of all three entities.

The FMLA provides that "[n]ormally the legal entity which employs the employees is the employer under the FMLA." 29 C.F.R. 825.104(c). It is undisputed that Plaintiff was employed by NASC. As to joint employment, the FMLA provides "[w]here two or more businesses exercise some control over the work or working conditions of the employee, the business may be joint employers under the FMLA." 29 C.F.R. § 825.106(a). Additionally, a joint relationship will exist where there is an agreement to share the employee, or where the employers are not completely disassociated with respect to the employee's employment and may be deemed to share control of the employee. *Id*. A determination of whether such a relationship exists must be made after viewing the entire relationship "in its totality." *Id*. at § 825.106(b).

Plaintiff has shown no evidence that any entity other than NASC exercised any type of control over Plaintiff's employment. NASC alone granted Plaintiff her leave of absence and terminated her employment. Even assuming that the Illinois Department of Human Services, and the City of Chicago Department of Public Health provided some funding to NASC, this is insufficient to establish a joint employer relationship. *See* 29 C.F.R. § 825.106; *Moldenhauer v. Tazewell-Pekin Consol. Communications Center*, No. 04-1169, 2006 WL 3842086, at *13 (C.D. Ill. Dec. 29, 2006) ("[C]reation and funding of a separate entity are not enough to constitute an employment relationship under the FMLA, which turns on the extent to which an entity supervised and controlled an employee, including the decisions to hire and fire.") Accordingly, I do not find that Plaintiff was a joint employee.

### C. Plaintiff's Intentional Infliction of Emotional Distress Claims Fail.

Plaintiff's complaint alleges that Defendants used their knowledge of the death of her son to terminate her employment and that Defendants increased pressure on the Plaintiff to return to work. Though these allegations indicate that Plaintiff's IIED claim is based on Plaintiff's termination, Defendants contend that her IIED claims are actually based on Plaintiff's retaliation claims pursuant to the FMLA.

Based on the allegations set forth in the complaint, Plaintiff's IIED claim is based on her termination. This claim, however, is preempted by the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101. The IHRA prohibits discrimination based upon disability. *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). Claims that arise under the IHRA are "inextricably linked" to an alleged civil rights violation, "such that there is no independent basis for the action apart from the Act itself"; therefore, such claims must be brought through the IHRA's

9

administrative procedures. Plaintiff failed to address this argument in their response. Instead, Plaintiff argues that her claim is based on Defendant's retaliation pursuant to the FMLA. Such assertions are belied by the language of her complaint which states that Defendants "used the Plaintiff's confused mental state to terminate the Plaintiff's employment", and that such conduct was extreme and outrageous.

Even if Plaintiff's claim was not barred, her allegations are insufficient to meet the requirements of an IIED claim. Under Illinois law, a plaintiff must show that (1) the conduct involved was truly extreme and outrageous; (2) the actor intended his conduct to inflict severe emotional distress or knew that there was a high probability that his conduct would cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). Here, the conduct alleged is the termination of her employment. This allegation is insufficient to support an IIED claim. *See Curran v. JP Morgan Chase*, 633 F.Supp.2d 639, 641 (N.D. Ill. 2009) (terminating an employee in violation of an anti-discriminatory statute is insufficient to constitute extreme or outrageous conduct).

Plaintiff's other allegation, argued in her motion for summary judgment, is that Watford intentionally interfered with the distribution of Porter's disability checks to cause her more harm. Plaintiff, however, fails to support these assertions. In support of this claim, Plaintiff points to Exhibit R. This exhibit consists of letters from Watford to Porter indicating that, pursuant to her request, her check was issued to Danielle McAfee. Plaintiff does not deny that she asked Porter to issue her checks to Danielle McAfee, and has failed to support her allegations with facts on the record. Likewise, Plaintiff did not address Defendant's discussion of the merits of her IIED claims in her response brief. Accordingly, her IIED claims fail.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted.

ENTER:

*James B. Zagel*
_____
James B. Zagel
United States District Judge

DATE: March 22, 2011